IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT E. FIELDS, <br> TDCJ No. 2038643, | § § § | |
| Petitioner, | § § | |
| V. | § § | No. 3:18-cv-1268-G-BN |
| DIRECTOR, TDCJ-CID, | § § § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Robert E. Fields, a Texas prisoner, is serving a total sentence of 25 years of imprisonment for his convictions in a state court in this district, for assault of a public servant (two counts) and felony DWI. *See State v. Fields*, No. F50040 (18th Jud. Dist. Ct., Johnson Cnty., Tex. Apr. 19, 2016). He has now filed a *pro se* application for writ of habeas corpus under 28 U.S.C. § 2254, not challenging these underlying convictions but instead asserting that he is eligible for release to discretionary mandatory supervision ("DMS"). *See* Dkt. No. 3.

The State responded to Fields's Section 2254 habeas application, asserting, among other things, that his claims should be dismissed as time barred. *See* Dkt. No. 8. Fields replied. *See* Dkt. No. 13. His case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge A. Joe Fish. And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss the habeas application with prejudice

as time barred.

## Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for federal habeas proceedings brought under 28 U.S.C. § 2254. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996, Pub. L. 104-132, 110 Stat. 1214 (1996). The limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the limitations period. *See id.* § 2244(d)(2).

The one-year limitations period is also subject to equitable tolling – "a discretionary doctrine that turns on the facts and circumstances of a particular case," *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), and only applies in "rare and

exceptional circumstances," *United States v. Riggs,* 314 F.3d 796, 800 n.9 (5th Cir. 2002) (citing *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998)). "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States,* 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida,* 560 U.S. 631, 649 (2010)).

Taking the second prong first, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009) (per curiam) (citation omitted). This "prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [the litigant's] control." *Menominee Indian Tribe*, 136 S. Ct. at 756 (emphasis in original).[1]

But "'[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.' What a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall." *Jackson v. Davis*, 933 F.3d 408, 411 (5th

---

[1] *See, e.g., Farmer v. D&O Contractors*, 640 F. App'x 302, 307 (5th Cir. 2016) (per curiam) (holding that because "the FBI did not actually prevent Farmer or any other Plaintiff from filing suit" but instead "advised Farmer that filing suit would have been against the FBI's interest" and "that the RICO claims could be filed after the investigation concluded," "[a]ny obstacle to suit was ... the product of Farmer's mistaken reliance on the FBI, and a party's mistaken belief is not an extraordinary circumstance" (citing *Menominee Indian Tribe*, 136 S. Ct. at 756-57)).

Cir. 2019) (quoting *Holland*, 560 U.S. at 653; footnote omitted).

A showing of "actual innocence" can also overcome AEDPA's statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But the actual innocence gateway is only available to a petitioner who presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

That is, the new, reliable evidence must be enough to persuade the Court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 386 (quoting *Schlup*, 513 U.S. at 329).[2]

## Analysis

The State argues that the timeliness of Fields's claims that he was improperly

---

[2] *See also Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992) ("The Supreme Court has made clear that the term 'actual innocence' means *factual*, as opposed to *legal*, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey [v. Zant*, 499 U.S. 467 (1991)], means that the person did not commit the crime." (footnotes omitted)); *Acker v. Davis*, 693 F. App'x 384, 392-93 (5th Cir 2017) (per curiam) ("Successful gateway claims of actual innocence are 'extremely rare,' and relief is available only in the 'extraordinary case' where there was 'manifest injustice.' *Schlup*, 513 U.S. at 324, 327. When considering a gateway claim of actual innocence, the district court must consider all of the evidence, 'old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.' *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks and citations omitted). 'Based on this total record, the court must make "a probabilistic determination about what reasonable, properly instructed jurors would do."' *Id.* (quoting *Schlup*, 513 U.S. at 329). 'The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors.' *Id.*" (citations modified)).

classified as ineligible for release to DMS should be determined under Section 2244(d)(1)(D), the factual predicate provision of the statute of limitations, *see* Dkt. No. 8 at 6-7, under which the one-year limitations period runs from "the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim," *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)).[3]

Under this provision, it matters when Fields first knew of – or, through due diligence, could have discovered – "the vital or principal facts underlying" his

---

[3] *See also Hunter v. Cain*, 478 F. App'x 852, 853 (5th Cir. 2012) (per curiam) ("[Petitioner] argues, pursuant to § 2244(d)(1)(D), that the limitations period should have commenced on February 17, 2009, when he received the DA's case file after his attorney-client relationship with Pulliam ended.... [But he] has not shown why he could not have discovered the report through the exercise of due diligence once it was disclosed to Pulliam. The district court correctly determined that Hunter's § 2254 application was untimely."); *Redmond v. Jackson*, 295 F. Supp. 2d 767, 772 (E.D. Mich. 2003) ("[I]t is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits." (citing *Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001) (citing, in turn, *Flanagan*, 154 F.3d at 198-99))); *Ballay v. Louisiana*, Civ. A. No. 06-10699, 2007 WL 4413990, at *6 (E.D. La. Dec. 13, 2007) (factual predicate of *Brady* claim "that the prosecution withheld a statement [witness gave to the sheriff's office] in which she allegedly made comments inconsistent with her trial testimony" was first "known by defense counsel at the time of trial, in that he asked for the statement to be produced"); *Toney v. Quarterman*, Civ. A. No. H-09-0083, 2009 WL 2356104, at *6-*7 (S.D. Tex. July 27, 2009) ("Unlike the petitioner in *Starns*[ *v. Andrews*, 524 F.3d 612 (5th Cir. 2008)], who was not aware of the existence of a material witness until that witness was deposed in the civil trial, Toney was fully aware at the time of his trial that a blood sample was taken from him," the factual predicate for his habeas claim. "Merely alleging new evidence to support facts that were known at an earlier date does not suffice to establish a new factual predicate." (internal citation omitted)).

contentions that he was eligible for release to DMS. *Vega v. Stephens*, No. 3:14-cv-551-P-BK, 2015 WL 4459262, at *3 (N.D. Tex. July 20, 2015) (defining "the factual predicate" as "the vital or principal facts underlying [a petitioner's] claims" (citing *McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007); *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012))); *see Blackman v. Stephens*, No. 3:13-cv-2073-P-BN, 2016 WL 777695, at *5 (N.D. Tex. Jan. 19, 2016) ("Under Section 2244(d)(1)(D), the applicable date is the date on which vital facts are first discovered, not when evidence to support those facts is first acquired."), *rec. accepted*, 2016 WL 759564 (N.D. Tex. Feb. 26, 2016).

> And the State argues that
>
> Fields could have, through the exercise of due diligence, discovered the factual predicate for his claims as early as April 19, 2016, the date of his convictions and sentencing. *See* [Dkt. No. 9-3] at 19. Under Texas law, "eligibility for mandatory supervision is governed by the law in effect at the time the offense was committed." *In re Byrd*, 162 S.W.3d 250, 252 (Tex. Crim. App. 2005). As such, Fields could have discovered as early as his date of conviction and sentencing that he was not eligible for release to DMS. *See Goolsbee v. Stephens*, No. H-14-3195, 2015 WL 2219144, at *2 (S.D. Tex. May 11, 2015) ("With the appropriate exercise of due diligence, Goolsbee could have discovered on the date of his conviction (July 6, 2012) that he was not eligible for mandatory supervision"); *accord Reaves v. Thaler*, No. 4:11-CV-740-Y, 2012 WL 826342, at *3 (N.D. Tex. Feb. 8, 2012), *report and recommendation adopted*, No. 4:11-CV-740-Y, 2012 WL 826743 (N.D. Tex. Mar. 12, 2012) ("As to petitioner's ineligibility for mandatory supervision, he could have discovered on the date of his October 25, 2001, sentencing that he would not be eligible for mandatory supervision"); *Belcher v. Dir., TDCJ-CID*, No. 5:04CV78, 2005 WL 2277393, at *2 (E.D. Tex. Sept. 12, 2005), *report and recommendation adopted*, No. 5:04CV78, 2005 WL 2465901 (E.D. Tex. Oct. 6, 2005) ("At the time Petitioner was convicted, he became ineligible for mandatory supervision. That was the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.").

Dkt. No. 8 at 7-8; *see also, e.g., Salazar v. Dir., TDCJ-CID*, No. 6:18cv45, 2018 WL

3826792, at *2 (E.D. Tex. June 13, 2018), *rec. adopted*, 2018 WL 3820144 (E.D. Tex. Aug. 10. 2018).

The undersigned agrees and finds that Section 2244(d)(1)(D) is the appropriate provision to apply here and that the day on which Fields was sentenced was "the date [he was] on notice of the facts which would support a claim" based on his eligibility for release to DMS. *Young*, 789 F.3d at 528. And Fields offers no arguments to credibly dispute either finding. *See generally* Dkt. No. 13.

Further, although Fields pursued state post-conviction relief as to his current claims – by filing a time dispute resolution ("TDR") and state applications for a writ of habeas corpus – none of those efforts statutorily tolled the limitations clock such that the Section 2254 application was timely when it was filed on May 14, 2018, the date on which Fields certifies that he placed it in the prison mailing system.[4] *See* Dkt. No. 3 at 10.

"[P]risoners are required to seek administrative review of their time-credit disputes by filing a TDR before filing a state habeas application. After filing a TDR, prisoners are then prohibited from filing for state habeas relief until they receive a written decision or until 180 days elapse, whichever comes first." *Stone v. Thaler*, 614 F.3d 136, 138 (5th Cir. 2010) (citing TEX. GOV'T CODE § 501.0081(b)(1)-(2)). Thus, "[a]

---

[4] *See* RULE 3(d), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.").

timely filed [TDR] form tolls the [limitations clock] until a written decision is received or until 180 days elapse, whichever comes first." *Salazar*, 2018 WL 3826792, at \*2 (citing *Stone*, 614 F.3d at 138).

Fields filed a TDR on March 15, 2017 and received a response on March 17, 2017. *See* Dkt. No. 9-3 at 84. Thus, his deadline to file a Section 2254 application was extended by two days. *See, e.g.*, *Salazar*, 2018 WL 3826792, at \*2. But this deadline was not further extended (or tolled) by Fields's pursuit of state habeas relief, in September 2017. *See* Dkt. No. 9-3 at 41, 59, 71; *Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013) ("Because his state habeas petition[s were] not filed within the one-year period" that commenced on [April 21, 2016], they "did not statutorily toll the limitation clock." (citing *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (in turn citing 28 U.S.C. § 2244(d)(2)))).

Thus, Fields's Section 2254 application is more than one year too late and should be denied as untimely absent equitable tolling of the limitations period. But Fields fails to provide allegations that could establish either prong of equitable tolling – that he pursued his rights diligently and that an extraordinary circumstance prevented his timely filing of the federal petition.

The Court should therefore dismiss the Section 2254 petition with prejudice as time barred.

### Recommendation

The Court should dismiss Petitioner Robert E. Fields's 28 U.S.C. § 2254 habeas application with prejudice as time barred.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 19, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE